IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 5, 2020

## DONTAYELL BALFOUR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 15-01047    Paula L. Skahan, Judge
_____

### No. W2019-01468-CCA-R3-PC
_____

Petitioner, Dontayelle Balfour, appeals the denial of his post-conviction petition. Petitioner argues that he was denied effective assistance of counsel when his trial counsel failed to adequately consult with him and failed to fully investigate witnesses that Petitioner requested prior to Petitioner's guilty plea to second degree murder. Following a review of the briefs of the parties and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Dontayell Balfour.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melissa Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

**Background**

Petitioner was indicted by a Shelby County Grand Jury for one count of first-degree murder. Subsequently, he entered an *Alford* plea to second-degree murder and received a forty-year sentence to be served in confinement.

*Post-conviction Hearing*

Trial counsel testified that he was appointed to represent Petitioner in February 2016. He received discovery from Petitioner's former counsel, and he received email discovery from the State. Trial counsel testified that it was his understanding that Petitioner had already been provided with discovery. Based on his letters to Petitioner, trial counsel believed that he again provided Petitioner with discovery when he first began representing him. He said that Petitioner later asked about discovery, and trial counsel provided it to him for the second time. When asked if he reviewed discovery with Petitioner, trial counsel testified:

> I know with [Petitioner] we had several meetings either in court, in the back in lock-up or in the jail. I specifically remember going through the photo lineups, the witness statements, going over basically what the evidence against [Petitioner] would be.
>
> The reason I did it is to allow him to make an informed decision. I remember telling him I thought the evidence in the case against him was very strong and I don't - - I couldn't tell you what day we flipped through it and went through it page by page but it's my recollections that that's what we did on multiple occasions.

Trial counsel specifically remembered showing Petitioner that his picture was circled in some of the photographic lineups, and he showed Petitioner statements from other witnesses. He noted that Petitioner provided him with an affidavit from one of the witnesses who recanted his or her statement. However, trial counsel advised Petitioner that there were five or six other individuals who made a statement concerning Petitioner's involvement in the murder. Trial counsel recalled the "crime scene diagram and going through that with [Petitioner] as well and just looking through whatever he would have questions about." Trial counsel testified that he represented Petitioner for approximately two years, and he estimated that he met with Petitioner approximately once a month or every other month. He noted that some of the meetings could have occurred on court dates. Trial counsel estimated that he met with Petitioner at the jail between fifteen to twenty times.

Trial counsel testified that he explained and reviewed the trial strategy with Petitioner. He noted that Petitioner's case was going to be very tough to defend because there were so many witnesses. The witnesses either saw Petitioner with a gun both before and after the shooting, or they said that Petitioner "came up to them and said that the victim was dead and if they told anybody harm would come to them too." Trial counsel testified that one possible trial strategy was that someone was trying to frame Petitioner, that is, Petitioner went into the house after something had already happened. A second possible defense trial counsel considered was a defense that another person

who had been robbed by the victim recently before the victim's murder had killed the victim. Trial counsel said that another possible trial strategy was to challenge the credibility of the witnesses against Petitioner because "several of them had been charged, felonies and had them pending over convicted so I was going to impeach those and then incorporate this other stuff." The last strategy was what trial counsel said was the culmination of his analysis. Trial counsel testified that he and Petitioner also discussed lesser-included offenses and the likelihood of Petitioner being convicted of a lesser-included offense. He told Petitioner that the likelihood of succeeding at trial was slim and that the likelihood of conviction on first-degree murder was high. When asked if he reviewed the pros and cons of a settlement versus trial, trial counsel testified:

> But the pros and cons I told him if he went to trial and lost, you know, you're facing a first degree murder so you're a young man, you have to do fifty-one years before you get out. So a con of going to trial losing would be, you know, fifty-one years, and if the judge stacked or added consecutive time, because there was multiple charges on this indictment, that would be another con.

> So flip that to a pro of pleading you know exactly to a day how much time you're going to do. You know that for sure what your sentence is going to be. You don't have to worry about appeals, you don't have to worry about any of that.

> You don't know, a pro and a con you never know what a jury's going to do because I told him he could go in there and walk out free with acquittal or he could get convicted as charged.

Trial counsel testified that he advised Petitioner that he should seek a settlement. However, it was Petitioner's decision. He said that throughout his representation, Petitioner did not want to go to trial "but he could never get a number that he could satisfy himself with that the State was willing to accept." Petitioner eventually signed the plea agreement to serve forty years for a conviction of second-degree murder.

Trial counsel testified that he had an investigator who attempted to locate potential witnesses provided by Petitioner. He said that the investigator had a very difficult time trying to locate the witnesses and spent months trying to track down the individuals. Trial counsel testified that the witnesses the investigator did locate were not beneficial to Petitioner's defense. Trial counsel thought that Dontavious Curtis was the witnesses who recanted his statement and identified Petitioner as being the person who committed the murder. They attempted to speak with Mr. Curtis through his attorney but were unable to do so.

On cross-examination, trial counsel agreed that his billing records showed that he visited Petitioner at the jail approximately nineteen times. On one of the occasions, he attempted to visit Petitioner but Petitioner was not brought out to meet with him. Trial counsel's records also showed that he printed discovery for Petitioner, consisting of approximately 228 pages, on February 17, 2016. He provided Petitioner with discovery a second time in November 2017. Trial counsel testified that Petitioner also communicated with him by letter. He said that Petitioner seemed to be very informed about his case and often had questions that trial counsel did his best to answer. Trial counsel asserted that he and Petitioner openly discussed the case.

Petitioner testified that he received discovery from trial counsel approximately two months before trial, and trial counsel reviewed it with him. He claimed that he did not know anything about his case until he read his co-defendant's discovery packet. Petitioner said that trial counsel mainly discussed plea offers with him. Petitioner felt that trial counsel was not doing his best for Petitioner and that "[h]e wasn't fighting like his life was on the line . . ." He said that trial counsel reviewed trial strategy with him at the "last minute" on the Thursday before trial.

Petitioner asserted that he wanted trial counsel to investigate several witnesses including Dontavious Curtis. He admitted that trial counsel employed a private investigator to investigate the witnesses, but the investigator was unable to locate them. Petitioner testified that he did not understand what an *Alford* plea was, and trial counsel did not explain an *Alford* plea to him or that he was pleading out of his sentencing range. He agreed that the guilty plea submission hearing transcript reflected that the trial court reviewed the plea with Petitioner, and Petitioner was informed that he was pleading out of range. However, Petitioner claimed that his mind was somewhere else at the time.

On cross-examination, Petitioner asserted that he was in custody for more than two years before he received discovery even though he requested it earlier. Petitioner agreed that the trial court informed him at the guilty plea hearing that he faced a minimum period of confinement of fifty-one years if his case went to trial, and he was convicted as charged.

**Analysis**

Petitioner argues that his trial counsel's performance was ineffective for failing to adequately communicate with him and discuss trial strategies prior to entering his guilty plea and failing to fully investigate witnesses. We disagree.

Initially, we note that Petitioner has failed to include the transcript from the guilty plea submission hearing in the record on appeal *even though* it was made an exhibit. The State pointed out in its brief this deficiency by Petitioner. Defendants have a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired

- 4 -

with respect to the issues which form the basis of the appeal" and will enable the appellate court to decide the issues. Tenn. Rule App. P. 24(a); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn.1999). While we acknowledge the deficiencies in the record, the record still provides a sufficient amount of information for us to review the issues presented.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687; see *Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e. a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would

instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

In addition, in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as state in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P 11(c). The trial court looks to the following factors in determining whether the defendant's guilty pleas were knowing and voluntary:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Our supreme court has stated that:

> [T]he petitioner for post-conviction relief [] has the burden of proving his factual allegations by clear and convincing evidence. *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011) (citing *336 Tenn. Code Ann. § 40-30-110(f) (2006) and Tenn. Sup. Ct. R. 28 § 8(D)(1)). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009). The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert*, 342 S.W.3d at 485. A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with no presumption of correctness. *Id.*; *Dellinger*, 279 S.W.3d at 294; *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008).

*Smith v. State*, 357 S.W.3d 322, 335-36 (Tenn. 2011).

## I.      Failure to Adequately Communicate and Discuss Trial Strategies

Petitioner argues that the "the only way he knew what was going on in his case was by reviewing his co-defendant's discovery pack[et]" and that he and trial counsel never discussed the "pros and cons" of going to trial.  He asserts that he received his discovery packet two months before trial, and he and trial counsel did not discuss the trial strategy until the Thursday before his trial. Concerning this ground, the post-conviction court made the following findings:

> Petitioner claims that Counsel was ineffective by failing to provide Petitioner with discovery until two months before his trial date.  Counsel was appointed to [Petitioner] in February of 2016.  Counsel testified in the Petition for Post-Conviction Relief Hearing that he printed a copy of the discovery on February 17, 2016, which he gave to Petitioner soon thereafter and again gave Petitioner a copy of discovery in November 2017.  Petitioner's trial was on February 12, 2018.

> The Tennessee Code states that the burden is on the Petitioner to prove by clear and convincing evidence that trial counsel's performance was deficient and that the performance prejudiced the outcome of the case. Tenn. Code Ann. § 40-30-110(f); *Hicks v. State*, 983 S.W.3d 240 (Tenn. Crim. App. 1998).  Petitioner has not included any specific facts in the record to refute Trial Counsel's testimony or any specific facts to support his claim that counsel failed to provide discovery until two months before his trial.  Nor did Petitioner provide any specific facts to show that counsel's actions regarding discovery either fell below the objective of reasonableness under prevailing professional norms or that Trial Counsel's performance prejudiced the outcome of the case.

The post-conviction court further found that trial counsel visited with Petitioner between seventeen and nineteen times in the jail, and wrote at least six letters to Petitioner which discussed the contents of discovery and answered any questions from Petitioner.  The post-conviction court concluded that there was no evidence in the record that trial counsel failed to adequately communicate with Petitioner.  Additionally, the post-conviction court found that trial counsel provided Petitioner with adequate information regarding trial strategy and the potential consequences of going to trial and that Petitioner provided no evidence in the record that trial counsel failed to investigate possible defense strategies.

The record in this case does not preponderate against the post-conviction court's factual findings.  Initially, we find that Petitioner has failed to show or even allege in his brief how trial counsel's alleged deficiencies in this area affected the outcome of his case. Additionally, the evidence presented at the post-conviction hearing shows that trial counsel's performance was not deficient.  Trial counsel testified that his billing records

showed that he visited Petitioner at the jail approximately nineteen times, although one of those times Petitioner was not brought out to meet with him, and they also communicated by letter. He provided Petitioner with discovery on two occasions well before trial, consisting of approximately two-hundred twenty-eight pages, and they reviewed the discovery on multiple occasions. He thought that Petitioner had also been provided with discovery by previous counsel. At the post-conviction hearing, Petitioner admitted that trial counsel reviewed discovery with him. Trial counsel even recalled specific documents from the discovery packet that he reviewed with Petitioner. Trial counsel testified that he explained and reviewed trial strategies with Petitioner, but the case against Petitioner was very strong. Trial counsel noted that there were at least three possible strategies that he considered using at trial. Trial counsel testified that he explained the pro and cons of a settlement versus going to trial. He said that throughout his representation, Petitioner did not want to go to trial. He said that he reviewed all of the evidence in Petitioner's case so that Petitioner could make an "informed decision" and that it was Petitioner's decision to accept the plea offer from the State.

The post-conviction court essentially found that trial counsel's testimony was more credible and that Petitioner failed to prove his allegations of fact by clear and convincing evidence. This court will not re-weigh or re-evaluate the credibility determinations made by the post-conviction court. All questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court, not the appellate courts. *Moman v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Petitioner is not entitled to relief on this basis.

## II. *Failure to Investigate Witnesses*

Petitioner contends that trial counsel rendered deficient performance by failing to "fully investigate" the witnesses that he requested. However, Petitioner does not specifically identify any witnesses in his argument that he alleges trial counsel failed to investigate, and he did not present any of the witnesses at the post-conviction hearing. It has long been established that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014) (quoting *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). Without this proof, this Court is unable to determine that trial counsel was either deficient in his investigation of the witnesses or that the lack thereof was prejudicial for Petitioner's case. Therefore, Petitioner is not entitled to relief on this ground.

Petitioner has failed to show that his guilty plea was not knowingly, voluntarily, and intelligently made with the effective assistance of counsel. In our de novo review with no presumption of correctness to the trial court's ruling, we conclude that Petitioner failed to establish either deficient performance or prejudice if there had been deficient

performance by trial counsel.  Accordingly, Petitioner is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.


_____
THOMAS T. WOODALL, JUDGE